UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No. 05-177-01 (ESH) |
| : | |
| TEDDARRIAN CREWS, : | |
| : | |
| **Defendant.** : | |
| : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing. For the reasons set forth herein, the government respectfully recommends that the Court sentence the defendant within the Guidelines range calculated in the PSR.

I.   **BACKGROUND**

On June 21, 2005, the defendant Teddarrian Crews pled guilty to a one-count felony information that charged him with Wire Fraud, in connection with his theft of $92,233.45 in electronic and computer equipment from his employer, the Equal Employment Opportunity Commission ("EEOC"). The evidence shows that the defendant, as part of a scheme and artifice to defraud and to obtain money by false and fraudulent pretenses, sold the items that he had stolen from the EEOC on e-Bay, representing that he was the lawful owner of these items.

During his plea colloquy the defendant admitted that between May 2004 and February 2005, while he was employed as an Audiovisual Specialist, he stole in excess of seventy electronic and computer items from the EEOC headquarters building in Washington, D.C. These items included, but were not limited to, Dell laptop computers, Cisco Catalyst 2950C and CISCO Catalyst WS 3550-

SMI network switches, D-Link video phones, Dell flat panel monitors, SHURE UC wireless microphone systems and INFOCUS LP70 projectors. The defendant sold nearly all of the stolen items through the Internet auction service e-Bay, using the seller name of "Cripwalker" and an e-mail address of swerc@msn.com.

On October 23, 2004, an investigator accessed the e-Bay website and observed that an individual later identified as "T.P." in San Jose, California, was selling a Cisco 2950C network switch. The investigator purchased this switch from T.P., who in turn sent it to him through the U.S. mail. Upon inspecting the switch, the investigator determined that it had the same serial number as a brand new Cisco 2950C network switch that had been stolen from the EEOC headquarters building in September 2004.

During an interview, T.P. told investigators that on September 22, 2004, he purchased a Cisco Catalyst 2950C network switch from a person using the e-Bay seller identification of "Cripwalker" and e-mail address of swerc@msn.com. T.P. paid for this item using e-Bay's payment system for online transactions which is called "PayPal." T.P. provided investigators with a record from PayPal dated September 22, 2004, documenting the completion of T.P.'s payment to "Cripwalker" who was further identified in the record as "Teddarrian Crews" with an e-mail address of "swerc@msn.com." T.P. told investigators that he had purchased additional Cisco Catalyst 2950 network switches from "Cripwalker" on September 29, 2004; September 30, 2004 (four switches); and October 5, 2004.

On December 11, 2004, an investigator purchased a SHURE UC wireless microphone system on e-Bay from a seller identified as "Cripwalker" using an e-mail address of swerc@msn.com. After the investigator paid for the item using PayPal, he received a receipt from PayPal indicating that his

payment had been made to "Teddarrian Crews." A few days after the sale, "Cripwalker" sent the wireless microphone system to the investigator in a United States Postal Service package. The package had the defendant's initials and known home address (3849 Eisenhower Avenue, Alexandria, VA 22304) listed in the return address section. Inside the package were three pieces of junk mail addressed to "Teddarrian Crews" of 3849 Eisenhower Avenue, Alexandria, VA 22304. The wireless microphone system that the agent received from "Cripwalker" matched the description and serial number of a SHURE wireless microphone system taken without permission from the EEOC headquarters building.

Further investigation revealed that the defendant, using the name "Cripwalker," sold or attempted to sell over eighty other items on e-Bay that were later determined to have been stolen from the EEOC headquarters building between May 2004 and February 2005. The fair market value of these items totaled $92,233.45.

Several of the e-Bay members who had purchased these items told investigators that they had made the purchase from an e-Bay seller identified as "Cripwalker" with an e-mail address of swerc@msn.com. These e-Bay members received the items they purchased from "Cripwalker" in packages displaying the return address of 3849 Eisenhower Avenue, Alexandria, VA, 22304, from either "Ted Crews;" "Lamar Crews" or "Teddarrian Crews." These members also provided investigators with PayPal records documenting each purchase made from "Cripwalker."

Records obtained from e-Bay document that the seller identified as "Cripwalker" became an e-Bay subscriber on October 30, 2002. From October 30, 2002 through October 5, 2004, "Cripwalker" maintained the following contact information on file at e-Bay: "Teddarrian Crews" of 3849 Eisenhower Avenue, Alexandria, VA, 22304. "Cripwalker" also listed an e-mail address

of swerc@msn.com. The Internet Protocol ("IP") address associated with Cripwalker's account is an IP address assigned to the EEOC. E-Bay records further indicate that on October 5, 2004, "Cripwalker" changed his contact information to: "Lamar Cruz" of 3849 Eisenhower Avenue, Alexandria, VA 22304.

PayPal records for swerc@msn.com list the user as "Teddarrian Crews" of "3849 Eisenhower Avenue, Alexandria, VA 22304." Cripwalker's PayPal account provides a credit card and a bank account in the name of "Teddarrian Crews." An analysis of the defendant's PayPal account reveals that between July 20, 2004 and December 31, 2004, there were a total of $43,250.39 electronic deposits. In addition, there were numerous electronic deposits by PayPal into the defendant's Wachovia Bank personal checking account between July 2004 and August 2004. A forensic examination of the defendant's EEOC desktop computer revealed photographs of items that were stolen from the EEOC and later sold on e-Bay by "Cripwalker." The forensic examination also revealed transaction information, e-mail communications, and PayPal records directly tying the defendant to the sale of the stolen EEOC items on e-Bay.

Specifically, on or about September 22, 2004, in a continuing course of conduct, in the District of Columbia and elsewhere, the defendant Teddarrian Crews, for the purpose of executing the above-described scheme and artifice to defraud and deprive, transmitted and caused to be transmitted by means of wire communication in interstate commerce, e-mail communications to T.P., a resident of San Jose, California, in order to induce T.P. to purchase a Cisco Catalyst 2950C network switch that the defendant represented was his property when in fact the defendant had stolen the Cisco Catalyst 2950 network switch from the EEOC.

II.     **SENTENCING CALCULATION**

    A     <u>Statutory Maxima</u>

The maximum sentence for Wire Fraud, pursuant to 18 U.S.C. §1343, is twenty years confinement. The maximum fine is $250,000.

    B.     <u>Sentencing Guidelines Calculation</u>

The government recommends that the Court follow the Guidelines calculations set forth in the PSR which correctly calculates the defendant's total offense level at 13. See PSR ¶31. This includes the base offense level of seven pursuant to U.S.S.G. § 2B1.1(a)(1)(B) and an eight-level enhancement for "loss" of more than $70,000 pursuant to U.S.S.G. § 2B1.1(b)(1)(E). Pursuant to the plea agreement, however, the government agreed not to oppose a two point reduction for acceptance of responsibility which yields a total offense level of 13. The PSR also has calculated correctly the defendant's criminal history as Category I. See PSR ¶33. Therefore, as anticipated by both parties per the plea agreement, the guideline range for the defendant is correctly calculated in the PSR as 12 to 18 months. See PSR ¶53. The PSR writer does not find factors indicating that a downward departure is warranted. See PSR ¶69. Further, the defendant specifically agreed not to seek a departure from this calculation. For the reasons set forth, <u>infra</u> §III of this Memorandum, the government respectfully recommends that the Court sentence the defendant within the Guideline range calculated in the PSR.

    C.     <u>The Impact of Booker</u>

The Court should impose a sentence within the 12-18 month guideline range.

In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in

Blakely v. Washington, 124 S. Ct. 2531 (2004).  The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury.  As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory." Booker, 125 S. Ct. at 756.  Although the Court struck down the provision that made the Guidelines mandatory, it expressly refused to invalidate the Guidelines in their entirety.

In the wake of Booker, this Court must make a correct calculation under the existing Sentencing Guidelines, and then consider the final guideline calculation when determining the sentence to be imposed.  Justice Breyer's majority opinion directed that "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Id. at 767.  The position of the United States is that, absent highly unusual circumstances, the sentence in a criminal case should fall within the guideline range as determined by the Court.  This view is shared by Congress and the Supreme Court.  As every Supreme Court justice in the various opinions in Booker recognized, the Guidelines carry out the express national policy, as articulated by Congress, that sentences be uniform across the country to the extent possible and be based on the offender's actual conduct and history.

Moreover, the Guidelines, consisting of offense characteristics and various grounds for departure, address all of the considerations relevant to sentencing, as articulated in 18 U.S.C. § 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of

the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ."

Accordingly, a sentence within the guideline range is presumptively reasonable, and accommodates the Congressional purpose, affirmed by the Supreme Court, of obtaining fair sentences which are uniform to the extent possible. The government anticipates that only sentences outside the guideline range will be subject to appellate scrutiny for reasonableness in light of the Congressional mandate. In this case, as explained further below, no unusual circumstances exist which warrant an exception to the preference for guideline sentencing. Therefore, the government respectfully recommends that the Court sentence the defendant within the guideline range calculated in the PSR.

### III.   DEFENDANT SHOULD BE SENTENCED WITHIN THE GUIIDELINE RANGE

In determining the appropriate sentence, the Court "shall consider . . . the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). The Court must also consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(D). Here, the Court should impose a term of imprisonment within the designated guideline range not only to reflect the serious nature of this crime, but to assure the uniform and appropriate treatment of like conduct.

      A.      <u>The Defendant's Conduct in Stealing from his Employer and then Using the Internet to Further his Scheme Justifies a Term of Imprisonment</u>

In this case, the defendant devised a scheme to steal computer and electronic equipment from a U.S. government agency that had employed him for over eleven years. As an audio visual specialist with the E.E.O.C, the defendant was entrusted with access to expensive computer and electronics equipment that supported the daily operations of the E.E.O.C. The defendant abused that trust by stealing in excess of $92,230 in electronic and computer equipment from his employer. Moreover, he used his work-issued computer to further his fraudulent scheme.

The defendant's conduct deprived his employees of computer and electronic equipment that will now have to be repurchased by the EEOC. Mr. Crews benefitted personally from his scheme, receiving an infusion of cash that he freely spent as he pleased, including on trips and gambling ventures.

The fact that Mr. Crews' dishonesty extended to unsuspecting members of the Internet auction service, e-Bay, should also give the Court substantial concern. Motivated by the desire for personal gain, the defendant chose to involve unwitting consumers in his scheme to defraud the government.

It is vital that the Court send a deterrent message that stealing over $92,000 in equipment and supplies from a United States government agency, and then using the Internet to sell these items is a matter of serious concern. The defendant's conduct cannot be overlooked or minimized. Thus, the Court's sentence should contemplate not only the serious nature of the defendant's conduct, but the deterrent effect that it will have on others contemplating the use of the Internet to facilitate schemes to defraud.

It is a bedrock principle in our criminal justice system that each person is responsible for his actions and, as a result, accountable for them. The defendant is no exception. His scheme to sell items that he stole from his employer over e-Bay reveals a troubling, and all too common, motivation -- greed. The defendant sought personal gain without regard for the potential financial havoc wreaked on his employer or on the many consumers who purchased the stolen goods he offered. This chain of events demonstrates that the defendant's actions were both premeditated and calculated to enrich himself at the expense of others – the United States Government and the taxpayers. Mr. Crews should receive neither more time, nor less time, than any other like individual committing the crime of wire fraud.

> B. The Defendant has previously been arrested and received a suspended sentence for stealing from another employer.

The Court should also consider the defendant's criminal history, which includes a previous suspended sentence for Petit Larceny imposed in the Circuit Court of Alexandria, Virginia. According to the uncontested PSR, the defendant was arrested in 1990 for stealing from his employer, Sears Department Store. PSR ¶ 33. At the time of his arrest, Mr. Crews was manning the cash register when he was observed pocketing money that had been given to him by an undercover security officer posing as a customer. The judge suspended imposition of sentence, placed the defendant on probation for two years and required him to perform 240 hours of community service. Upon completion of his probation, the charge was dismissed.

The fact that the defendant has previously been convicted of a theft-related crime, reveals that he did not learn from his previous contact with the criminal justice system. Moreover, the defendant was afforded the opportunity for a suspended sentence and probation with community

service for that offense, yet that experience failed to deter him from committing further criminal conduct. Instead, he went on to steal from another employer, in a much more egregious fashion.

Although Mr. Crews entered a plea of guilty, it is at this point difficult to assess whether he has fully accepted responsibility and is remorseful for his conduct. During his meeting with the PSR writer, Mr. Crews elected not to discuss his involvement in this matter. As such, there is no way to determine whether the defendant truly is remorseful for his conduct.

Accordingly, the government believes that a term of incarceration within the prescribed Guideline range is appropriate and will give both the government and the defendant the benefit of the bargain negotiated.

## IV.    RESTITUTION

The victim government agency has documented a loss of $92,233.45. As the PSR states, the Court shall order full restitution to the victims without consideration of the economic circumstances of the defendant. See PSR ¶ 66, citing 18 U.S.C. § 3664(f)(1)(A). As such, the government requests that the Court order restitution in the amount of $92,233.45 to the Equal Employment Opportunity Commission.

## V.    CONCLUSION

The facts of this case are all too typical of the kind of cases that are prosecuted under 18 U.S.C. § 1343 - crimes motivated by greed. Furthermore, all the mitigating factors which the defendant is likely to raise have been taken into consideration by the Guidelines. Accordingly, the government respectfully requests that the Court sentence the defendant to a term of incarceration within the prescribed Guideline range and further that the Court order the defendant

to pay full restitution at the conclusion of any term of incarceration.

                                    Respectfully submitted,

                                    KENNETH L. WAINSTEIN
                                    UNITED STATES ATTORNEY

                                    _____

                                    JOHN P. CARLIN
                                    KIM A. HERD
                                    Assistant United States Attorneys
                                    Fraud & Public Corruption Section
                                    555 4th Street, N.W.
                                    Washington, D.C. 20530
                                    (202) 353-4862
                                    (202) 616-3702

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a copy of the foregoing Government's Memorandum in Aid of Sentencing has been served electronically and by telecopier (703) 522-4570 upon Nicholas Balland, Esq., counsel for the defendant on 16th of September 2005.

                                    _____
                                    KIM A. HERD
                                    ASSISTANT U.S. ATTORNEY